# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2011AP2864-CRAC |
| COMPLETE TITLE: | State of Wisconsin,<br>        Plaintiff-Appellant-Cross-Respondent-Petitioner,<br>     v.<br>Samuel Curtis Johnson, III,<br>        Defendant-Respondent-Cross-Appellant. |

REVIEW OF A SUPREME COURT DECISION
(Reported at 348 Wis. 2d 450, 832 N.W.2d 609)
PDC No: 2013 WI 59

| | |
|---|---|
| OPINION FILED: | March 26, 2014 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|   COURT: | |
|   COUNTY: | |
|   JUDGE: | |

| | |
|---|---|
| JUSTICES: | |
|   CONCUR/DISSENT: | BRADLEY, J., ABRAHAMSON, C.J., concur and dissent in part. (Opinion filed.) |
|   NOT PARTICIPATING: | PROSSER, GABLEMAN, J.J., did not participate. |

ATTORNEYS:

For the plaintiff-appellant-cross-respondent-petitioner, there was a motion for reconsideration by *Marguerite Moeller*, assistant attorney general, and *J.B. Van Hollen*, attorney general.

For the defendant-respondent-cross-appellant, there was a motion for reconsideration by *Michael F. Hart*, *Craig S. Powell*, *Geoffrey R. Misfeldt*, and *Kohler & Hart, S.C.*, Milwaukee, and *Mark D. Richards* and *Richards & Hall, S.C.*, Racine, and *Stephen J. Meyer* and *Meyer Law*, Madison.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2011AP2864-CRAC
(L.C. No. 2011CF376)

STATE OF WISCONSIN                    :          IN SUPREME COURT

**State of Wisconsin,**

     **Plaintiff-Appellant-Cross-Respondent-Petitioner,**

     **v.**

**Samuel Curtis Johnson, III,**

     **Defendant-Respondent-Cross-Appellant.**

**FILED**

**MAR 26, 2014**

Diane M. Fremgen
Clerk of Supreme Court

MOTION for reconsideration.  *Reconsideration granted.*

¶1  PER CURIAM.  On July 3, 2013, this court issued a per curiam opinion in State v. Johnson, 2013 WI 59, 348 Wis. 2d 450, 832 N.W.2d 609, which modified and affirmed the unpublished decision of the court of appeals, State v. Johnson, No. 2011AP2864-CRAC, unpublished slip op. (Wis. Ct. App. Apr. 18, 2012), and remanded the matter to the circuit court for further proceedings.  On July 22, 2013, both Johnson and the State filed motions for reconsideration of the court's decision.  Given the parties' motions, we acknowledge the necessity of clarifying the previous per curiam.  The court hereby grants Johnson's motion

for reconsideration in order to clarify that this court's previous per curiam opinion represented a deadlock and should not be read as minority vote pooling.[1] Because this court has deadlocked, the court of appeals decision must be affirmed.

¶2 Specifically, no three justices reach agreement to either affirm, reverse, or modify the decision of the court of appeals consistent with precedent. Consequently, the court of appeals decision remains the law of the case. See Phillips v. U.S. Bank Nat'l Ass'n, 2010 WI 131, ¶¶1-2, 329 Wis. 2d 639, 791 N.W.2d 190; Hornback v. Archdiocese of Milwaukee, 2008 WI 98, ¶63, 313 Wis. 2d 294, 752 N.W.2d 862; see also 6A Jay E. Grenig, Wisconsin Practice Series: Appeal and Review § 55:18 (5th ed.). In light of the motion for reconsideration and the fact that our previous per curiam left the parties and the circuit court without sufficient guidance or ability to proceed consistent with precedent, the court is now compelled to clarify that per curiam.

¶3 Relevant to the case at issue, our conclusions are guided by longstanding precedent. State v. Green, 2002 WI 68, 253 Wis. 2d 356, 646 N.W.2d 298; State v. Shiffra, 175 Wis. 2d 600, 499 N.W.2d 719 (Ct. App. 1993). To be clear, as a court of five justices, we do not herein overturn or modify any precedent. Very simply stated, the court of appeals is affirmed because no three justices conclude either (1) that under

---

[1] The State's motion for reconsideration related to a separate issue on jury instructions. The State's motion for reconsideration is denied.

_Shiffra_, the victim must produce the records if she is to testify, or (2) that under _Green_, the victim need not produce the records in order to testify.

¶4 In the case at issue, _Shiffra_ and _Green_ leave each justice with any one of the above options, but precedent does not provide any justice with the option to consider the production of medical records without tethering that production determination to its impact upon whether the victim may testify. _Green_, 253 Wis. 2d 356, ¶37; _Shiffra_, 175 Wis. 2d at 612. Precedent instructs us that those considerations are necessarily tethered together. Simply stated, _Shiffra_ and _Green_ instruct us that an alleged victim may:

- Produce the medical records and then testify,
- Not produce the records and then not testify, or
- Not produce the records because the records are not required to be produced, and nonetheless testify.

¶5 Critically, our previous per curiam did not clearly state that the court of appeals must be affirmed because no one of the above options were accepted by any three justices. The decision to produce and the consequence of whether testimony is allowed cannot be separated. _Green_, 253 Wis. 2d 356, ¶37; _Shiffra_, 175 Wis. 2d at 612. The prior per curiam was incorrect to convey that a majority could be reached by separating whether the medical records must be produced from whether the victim may testify because such a separation would produce new criteria that a majority of the court has not authorized.

3

¶6 We have been presented with a motion for reconsideration because we failed to make clear that no three justices have chosen only one of the options above. As a point of clarification, we will briefly expound upon each justice's legal conclusions.

¶7 In the case at issue, Justice Crooks concludes that Shiffra is good law and if the victim will not produce her medical records, then she cannot testify. Justice Crooks' position is consistent with precedent. He would affirm the decision of the court of appeals.

¶8 Consistent with the precedent in Green, Justice Ziegler concludes that the defendant did not make a sufficient showing to require an in camera review. Thus, the victim need not produce her records and she may nonetheless testify. Justice Ziegler would reverse the decision of the court of appeals.

¶9 Justice Roggensack similarly concludes that the victim need not produce her medical records and that she may testify, but Justice Roggensack would overrule Shiffra. Justice Roggensack further concludes that, even if Shiffra is not overruled, the requisite showing under Green has not been made so as to require the victim to produce her records and that the victim may testify. Thus, Justice Roggensack would also reverse the decision of the court of appeals.

¶10 Chief Justice Abrahamson and Justice Bradley, however, do not adopt any of the above Shiffra or Green analyses, nor would they overrule Shiffra. Instead, Chief Justice Abrahamson

4

and Justice Bradley separate the decision to produce the medical records from whether the victim is permitted to testify. They conclude that a majority can be reached by taking a vote on each issue separately. We do not adopt this piecemeal approach, as it is inconsistent with precedent.

¶11 Stated differently, neither Chief Justice Abrahamson nor Justice Bradley's conclusions accept any one of the following options available under longstanding precedent: (1) the victim must produce her medical records, in order to be allowed to testify under Shiffra; (2) if the victim refuses to produce her medical records, then she is not allowed to testify under Shiffra; and (3) if there is no showing so as to require the victim to produce her medical records for in camera inspection, she may nonetheless testify under Green.

¶12 Instead, Chief Justice Abrahamson and Justice Bradley would first determine whether a victim must produce her records, and then make a separate determination on whether she may testify, without accounting for the necessary connection between the two considerations. The procedure espoused by Chief Justice Abrahamson and Justice Bradley is a departure from common practice and precedent. Circuit courts and counsel have functioned well using the Shiffra/Green analysis for many years, and we are mindful not to inadvertently or unintentionally overturn that precedent in this five-justice, per curiam opinion that has no majority.

¶13 As a result, since a majority of the court has not reached consensus under precedent so as to decide the issue

5

presented and the court is deadlocked, the decision of the court of appeals must be affirmed.

*By the Court.*—The motion for reconsideration is granted.

¶14  DAVID T. PROSSER, J., and MICHAEL J. GABLEMAN, J., did not participate.

¶15 ANN WALSH BRADLEY, J. *(concurring in part and dissenting in part).* In granting Johnson's motion for reconsideration, the per curiam purports to "clarify that this court's previous per curiam opinion represented a deadlock."[1] Per curiam, ¶1; see also id., ¶13 ("the court is deadlocked . . . "). It makes this contention despite the fact that the previous per curiam was unanimous in its conclusion and direction to the circuit court.

¶16 There was no deadlock. All five justices sitting on the case unanimously concluded and directed that "[u]pon remand,

---

[1] In its mandate of "Reconsideration granted," the per curiam appears to depart from our normal procedure. In its text, the per curiam indicates that it is "clarifying the previous per curiam." Per curiam, ¶1; see also id. ("in order to clarify . . . ."); ¶2 ("the court is now compelled to clarify . . . ."); ¶6 ("As a point of clarification . . ."). If the per curiam is truly "clarifying" the previous per curiam, as it purports to do, then the appropriate approach is to deny the motion and issue a clarification. See, e.g., Industrial Roofing Services, Inc. v. Marquardt, 2007 WI 62, ¶¶3, 4, 301 Wis. 2d 30, 731 N.W.2d 634 (denying the motion but writing further to clarify the opinion); DaimlerChrysler v. LIRC, 2007 WI 40, 300 Wis. 2d 133, 729 N.W.2d 212 (denying the motion but writing further to clarify the opinion); Metropolitan Ventures v. GEA Associates, 2007 WI 23, 299 Wis. 2d 174, 727 N.W.2d 502 (amending footnote to "clarify our opinion to decide issues raised by the parties but not decided by the court.").

Additionally, at the outset and in its mandate, the per curiam refers to a sole motion for reconsideration ("Motion for reconsideration. Reconsideration granted."). In its first paragraph, however, the per curiam notes that the State also filed a motion for reconsideration, and denies that motion in a footnote, without any accompanying discussion. Per curiam, ¶1, n.1. Accordingly, I concur in part and dissent in part. I concur in the per curiam's footnote denial of the State's motion for reconsideration, and dissent from its mandate, granting Johnson's motion for reconsideration.

the circuit court may not require production of the privately-held, privileged mental health records for in camera review. However, upon remand, the privilege-holder may be called to testify in this case." State v. Johnson, 2013 WI 59, ¶9, 348 Wis. 2d 450, 832 N.W.2d 609. Additionally, the per curiam fails to explain how an odd number of justices can be deadlocked. This case is not like the three-three split cases cited by the per curiam. Per curiam, ¶2.[2]

¶17 The per curiam mistakenly concludes that Shiffra and Green provide only three options regarding production of records and testimony of an alleged victim. It concludes that only three options exist because of its belief that "[t]he decision to produce and the consequence of whether testimony is allowed cannot be separated." Id., ¶5. This cribbed view incorrectly

---

[2] To the extent that the per curiam suggests that because we are sitting as a court with only five justices that our opinions are not precedential, it is simply incorrect.

This court can and has previously issued opinions with five sitting justices, in which the justices were split 3-2 on individual issues. See In re Disciplinary Proceedings against Humphrey, 2012 WI 32, ¶97, 339 Wis. 2d 531, 811 N.W.2d 363 ("That only five justices participate in a matter before this court is not an everyday occurrence, but it is not an irregularity. A five-justice decision, with two justices not participating after being given the opportunity to do so, is valid."); see also State v. Braun, 100 Wis. 2d 77, 301 N.W.2d 180 (1981) (Abrahamson, J. and Heffernan, J. dissenting; Callow, J. and Coffey, J. not participating); Wussow v. Commercial Mechanisms, Inc., 97 Wis. 2d 136, 293 N.W.2d 897 (1980) (Coffey, J. and Hansen, J., dissenting; Abrahamson, J. and Steinmetz, J. not participating).

interprets <u>Shiffra</u> as if the only remedy available for refusal to produce records is to suppress the victim's testimony.

¶18 This approach ignores the validity of a fourth option——the option which was provided for in the previous per curiam, which was unanimous.

¶19 <u>Shiffra</u> provides that there must be some remedy for a refusal to produce records, but exclusion of the victim's testimony is not the only possible remedy. The court in <u>Shiffra</u> expressly contemplated that a variety of sanctions may be appropriate depending on the circumstances. <u>State v. Shiffra</u>, 175 Wis. 2d 600, 612, 499 N.W.2d 719 (Ct. App. 1993) ("The only issue remaining is whether the trial court misused its discretion when it suppressed Pamela's testimony as a sanction for her refusal to release the records. <u>In this situation, no other sanction would be appropriate</u>. The court did not have the authority to hold Pamela in contempt . . . . An adjournment in this case would be of no benefit . . . . <u>Under the circumstances</u>, the only method of protecting Shiffra's right to a fair trial was to suppress Pamela's testimony if she refused to disclose her records.") (Emphasis added.)

¶20 Indeed, this is the interpretation of <u>Shiffra</u> accorded by its author. <u>State v. Johnson</u>, No. 2011AP2864-CRAC, unpublished slip op., ¶¶23-28 (Wis. Ct. App. Apr. 18, 2012) (Brown, C.J., dissenting). As he explained, <u>Shiffra</u> does not necessarily require suppression of T.S.'s testimony in this case, despite the refusal to release medical or counseling records. <u>Id.</u>, ¶24. The central focus of the rationale in

3

_Shiffra_ was the principle that "[w]hen there are two competing and compelling societal interests, it is for the court to balance these interests on a case-by-case basis. The courts are especially equipped for this task. Indeed, it is what judges do." _Id._, ¶27.

¶21 The per curiam's citation to _Shiffra_ and _Green_ does not show that the decision to produce and the suppression of testimony cannot be separated. _See_ per curiam, ¶¶4-5. In fact, the citation to _Shiffra_ only reinforces the point that suppression of testimony is but one of multiple possible sanctions for a refusal to produce records. _See Shiffra_, 175 Wis. 2d at 612. Likewise, _Green_ does not support the majority's contention. It does not even address whether testimony should be allowed, but rather focuses on whether Green had met his burden for obtaining in camera inspection of counseling records by the court. _State v. Green_, 2002 WI 68, ¶37, 253 Wis. 2d 356, 646 N.W.2d 298.

¶22 Turning to the motions for reconsideration, I would deny both motions and address each in turn.

¶23 The core of Johnson's motion for reconsideration is his claim that this court's prior per curiam is invalid because it relies on minority vote-pooling. Johnson argues that there is no "majority-backed rationale for 'modifying' the court of appeals' decision" and the "court of appeals' decision requiring suppression of T.S.'s testimony must be affirmed." In support of this argument, he cites the rule that "a majority must agree on some one specific ground of error fatal to the judgment, or

4

the judgment must be affirmed." _See_ _State v. Gustafson_, 121 Wis. 2d 459, 461, 359 N.W.2d 920 (1985) (footnote omitted); _see also_ _Will of McNaughton_, 138 Wis. 179, 118 N.W. 997 (1909).

¶24 Johnson's minority vote-pooling argument should be rejected for multiple reasons. First, the rule is inapplicable because this court's decision does not reverse a circuit court judgment. As explained by the _Gustafson_ court, the _McNaughton_ rationale for rejecting minority vote-pooling focuses on the harm that "would result in _reversals_ without adequate guidance to the trial court upon a new hearing." 121 Wis. 2d at 462 (emphasis added). Here, the prior per curiam did not reverse a judgment. Rather, it affirmed the circuit court's order allowing T.S. to testify.

¶25 Additionally, the previous per curiam provided the guidance envisioned by the _McNaughton_ court. Justices Roggensack and Ziegler found Johnson has not shown an entitlement to in camera review of the records, and thus no production was required. Accordingly, T.S. may testify. Chief Justice Abrahamson and I found that Johnson had established a right to in camera review, and that the circuit court was within its discretion to balance Johnson's right against T.S.'s right to privacy. Accordingly, T.S. may testify. While these are two different paths to the same destination, they do not result in any risk of confusion upon remand. Unlike the situation in _McNaughton_, here the circuit court has guidance on the proper course to follow: T.S. may testify.

5

¶26 Second, this court's decision in Ives dictates that the rule against minority vote-pooling does not apply in these circumstances. Ives v. Coopertools, 208 Wis. 2d 55, 559 N.W.2d 571 (1997). In Ives, all six justices hearing the case decided that the court of appeals was wrong to vacate the circuit court's order. One group of three justices agreed on one rationale, and the other three justices relied on different reasoning. The court decided that the McNaughton rule did not apply because all justices agreed on "the proper resolution of the contributory negligence question" despite dividing on the rationale. Id. at 58. Here, similarly, four of the five justices participating in the case agree with the circuit court that T.S. may testify, despite dividing on the rationale. Following Ives, the rule against minority vote-pooling provides no basis for reconsidering this court's prior per curiam, which was unanimous.

¶27 Furthermore, unlike here, the six justices sitting on the case in Ives were split down the middle and there was no majority on any rationale. 208 Wis. 2d at 57. Here, as the previous per curiam opinion explained, "there is a majority regarding each issue presented," but with varying rationales. Johnson, 348 Wis. 2d 450, ¶8. Three of the five justices sitting on the case agreed that the circuit court could not order production of the records, and four of the five justices concluded that T.S. may testify. To the extent the rationales diverge, that simply goes to the precedential value of each

justice's rationale, see Ives, 208 Wis. 2d at 57-58. It is not minority vote-pooling.

¶28 Johnson's final basis for seeking reconsideration is his argument that the decision violates Wis. Const. art. I, § 9, because the court as a whole recognized that he had a constitutional right to in camera review, but at the same time denied him any remedy. This argument is without merit.

¶29 Johnson fails to appreciate the scope and history of the "right to remedy" clause of Article I, § 9.[3] It has been interpreted in terms of existing legal rights, and applies only where "an individual has an independent legislatively-recognized right" or "common-law right to bring a cause of action." Estate of Makos v. Wiscosnin Masons Health Care Fund, 211 Wis. 2d 41, 62-63, 564 N.W.2d 662 (1997) (Crooks, J., concurring).[4] This definition cannot stretch to include Johnson's alleged "right" in this case. Further, this court has explained that, based on the history of the "right to remedy" clause, it is to be understood as "primarily addressed to the right of persons to have access to the courts and to obtain justice on the basis of the law as it in fact exists." Mulder v. Acme-Cleveland Corp.,

---

[3] "Every person is entitled to a certain remedy in the laws for all injuries, or wrongs which he may receive in his person, property, or character; he ought to obtain justice freely, and without being obliged to purchase it, completely and without denial, promptly and without delay, conformably to the laws." Wis. Const. art. I, § 9.

[4] Although Estate of Makos was overruled by Aicher v. Wisconsin Patients Comp. Fund, 2000 WI 98, 237 Wis. 2d 99, 613 N.W.2d 849, Justice Crooks' discussion of the history and purpose of the "right to remedy" clause remains useful.

95 Wis. 2d 173, 189, 290 N.W.2d 276 (1980).[5] This case does not involve any concern about Johnson's access to the courts, nor does he allege as much. Accordingly, the "right to remedy" clause provides no basis for reconsidering this court's decision.

¶30 I examine next the State's motion for reconsideration. Essentially, the State seeks direction on whether the circuit court's proposed remedy of a curative jury instruction is permissible. Specifically, it asks the court to reconsider or clarify "that portion of its decision regarding the propriety of a special instruction allowing the jury to draw an inference favorable to the defense from T.S.'s invocation of her statutory privilege regarding her therapy records." The prior per curiam did not discuss the jury instruction issue, but included a footnote stating that Chief Justice Abrahamson and I both concluded that the jury instruction here was impermissible. Johnson, 348 Wis. 2d 450, ¶4 n.4.

¶31 Due to the previous per curiam's silence as to the position of the other three participating justices on the curative instruction, the State is concerned the decision could be read to mean that the instruction is permissible. Technically, however, no real clarification is needed. The

---

[5] Similarly, other decisions have recognized that the "right to remedy" clause originated out of concern that citizens should have access to the courts to remedy existing legal rights, as to a medical malpractice action, and should not have to bribe public officials in order to obtain access to courts. Aicher, 237 Wis. 2d 99, ¶¶41-44; James A.O. v. George C.B., 182 Wis. 2d 166, 175, 513 N.W.2d 410 (Ct. App. 1994).

previous per curiam affirmed the court of appeals subject to modification, and the court did not modify that part of the court of appeals' opinion that rejected the curative instruction. As such, the court of appeals' rationale and rejection of the proposed curative instruction stands as the last word on the subject. State v. Johnson, No. 2011AP2864-CRAC, unpublished slip op., ¶18 (Wis. Ct. App. Apr. 18, 2012).

¶32 For the reasons set forth above, I respectfully concur in part and dissent in part.

¶33 I am authorized to state that CHIEF JUSTICE SHIRLEY S. ABRAHAMSON joins this opinion.