COURT OF APPEALS
DECISION
DATED AND FILED

March 31, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP1006-CR**

Cir. Ct. No. 2017CF797

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT I

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

DARIUS L. BREWER, JR.,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Milwaukee County: MARK A. SANDERS, Judge. *Affirmed*.

Before White, C.J., Donald, and Geenen, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Darius L. Brewer, Jr., appeals the judgment convicting him of two counts of sexually assaulting a child under the age of twelve. He also appeals the order denying his motion for postconviction relief. We affirm.

¶2 In 2017, Brewer was charged with sexually assaulting Jay and Tom,[1] his girlfriend's foster sons, who were twin boys. According to the complaint, Jay and Tom were six years old and had moved to a new foster placement with Carol when they reported the sexual assaults.[2] They both were initially interviewed separately by a forensic interviewer in March of 2016, at which time Tom told the interviewer he had been assaulted but Jay denied any assault. Following continuing disclosures of sexual abuse by the boys, however, Jay was re-interviewed in September 2016 and, at that time, reported that Brewer had in fact assaulted him.

¶3 Brewer and his girlfriend, who was charged with failure to act to prevent the sexual assaults, were tried together. Numerous witnesses testified, including: Jay's kindergarten teacher; the boys' foster mother, Carol; Lynn Gahagan, the forensic interviewer; Jay and Tom; a psychologist; and Brewer.

¶4 Jay's kindergarten teacher testified that Jay told her that his prior foster mother physically abused him. She reported the allegation to the school social worker.

---

[1] Pursuant to WIS. STAT. RULE 809.86 (2023-24), we use pseudonyms when referring to the victims and to some of the trial witnesses. All references to the Wisconsin Statutes are to the 2023-24 version.

[2] The boys had been removed from Brewer's girlfriend's home following allegations that Brewer's girlfriend physically abused them.

¶5 Carol, the boys' second foster mother, testified that the boys exhibited unusual behavior when they came to live with her. She testified that Jay and Tom would kiss and touch each other and sleep while touching each other. Carol learned about the sexual abuse allegations at a parent-teacher conference with Jay's kindergarten teacher. She asked Jay and Tom about it, and they confirmed the sexual abuse. Carol called a social worker in March 2016, and a few days later, Jay and Tom were interviewed.

¶6 Lynn Gahagan, the forensic interviewer, testified that she interviewed Jay and Tom in March 2016. She interviewed Jay again in September 2016. Videos of the three interviews were played for the jury. In his first and only interview, Tom talked about being sexually abused by Brewer. In contrast, Jay denied being sexually abused in his first interview. In his second interview, however, Jay talked about being sexually abused by Brewer.

¶7 In addition, Jay and Tom both testified at trial. Jay testified that Brewer dragged him down the stairs into the basement, and he described the sexual assaults in graphic terms. Jay further testified that afterward he would bleed and had to sit in cold water in the bathtub. Tom likewise testified that Brewer dragged him into the basement, and he also described the assaults in graphic terms.

¶8 The defense presented testimony from Dr. Jacqueline Bashkoff, a psychologist who watched the three interview videos. Dr. Bashkoff testified that in her opinion, the interviews did not follow national protocols—in part, because those protocols say that "one interview should be sufficient." She testified that additional interviews lead to an increased risk of false allegations.

¶9 Brewer testified and denied sexually assaulting Jay or Tom. He denied ever being alone with either child. Brewer's girlfriend did not testify.

¶10 The jury found Brewer guilty of sexual assault. It found his girlfriend not guilty of failing to act to prevent the assaults.

¶11 After trial, Brewer, pro se, moved for postconviction relief. He argued that the State failed to give the defense notice that it was going to play the video recording of Jay's September 2016 interview at trial, and that his trial counsel was ineffective for not objecting to the playing of the video recording. Brewer also argued that his trial counsel was ineffective for failing to investigate and call the following potential witnesses: his girlfriend, the doctor who examined Jay and Tom, and D.B., the mother of Brewer's other children. Brewer additionally argued that trial counsel was ineffective for not moving to sever his case from his girlfriend's case and for not presenting certain evidence, including: his and his girlfriend's interrogation videos, his work schedule and records, transcripts of Jay and Tom's forensic interviews, and the boys' medical reports and school and daycare reports.

¶12 The trial court denied Brewer's motion without a hearing in a written decision, in which it agreed with and adopted the State's analysis. Brewer then obtained postconviction counsel, who filed a no-merit notice of appeal. Brewer opted to proceed without counsel, and he now appeals pro se.

¶13 On appeal, Brewer challenges the trial court's denial of his postconviction motion. We review whether Brewer's postconviction motion alleges sufficient facts entitling him to a hearing under a mixed standard. *See* ***State v. Allen***, 2004 WI 106, ¶9, 274 Wis. 2d 568, 682 N.W.2d 433. First, we determine de novo whether the motion on its face "alleges sufficient material facts

that, if true, would entitle the defendant to relief." *Id.* If it does, the trial court must hold an evidentiary hearing. *Id.* However, if the motion does not raise facts sufficient to entitle Brewer to relief, presents only conclusory allegations, or if the record conclusively demonstrates that Brewer is not entitled to relief, the trial court has the discretion to grant or deny a hearing. *See id.* We review this discretionary decision under the deferential erroneous exercise of discretion standard. *See id.*

¶14 Specifically, Brewer argues that the trial court erred in denying his motion without a hearing because trial counsel was ineffective. To establish a claim for ineffective assistance of counsel, Brewer must show that trial counsel's performance was deficient and that this deficient performance was prejudicial. *See State v. Mayo,* 2007 WI 78, ¶33, 301 Wis. 2d 642, 734 N.W.2d 115. To establish deficient performance, Brewer must show facts from which a court could conclude that trial counsel's representation fell below the objective standards of reasonableness. *See State v. Wesley,* 2009 WI App 118, ¶23, 321 Wis. 2d 151, 772 N.W.2d 232. To demonstrate prejudice, he "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland v. Washington*, 466 U.S. 668, 694 (1984). If Brewer fails to make a sufficient showing on one *Strickland* prong, we need not address the other. *See id.* at 697. The issues of performance and prejudice present mixed questions of fact and law. *State v. Sanchez*, 201 Wis. 2d 219, 236, 548 N.W.2d 69 (1996). Findings of historical fact will not be upset unless they are clearly erroneous, but the question of whether counsel's performance was deficient or prejudicial are legal issues we review independently. *See id.* at 236-37.

¶15 On appeal, Brewer renews the arguments made in his postconviction motion, presenting numerous ways in which he claims trial counsel was ineffective. We discuss each in turn.

*Failure to Object to Admission of the September 8, 2016 Video Interview*

¶16 Brewer first argues that trial counsel was ineffective for failing to object to the admission of Jay's September 2016 video interview. In its decision denying Brewer's postconviction motion, the trial court concluded that even if trial counsel had objected, the video would have been admitted under the residual hearsay objection, WIS. STAT. § 908.08(7). It also determined that Brewer failed to prove prejudice. The court reasoned that, "given the testimonies of both [Jay] and [Tom] and their other disclosures, there was not a reasonable probability of a different result had the September 8, 2016 interview been excluded from trial."

¶17 Brewer argues that the admission of the video was prejudicial because the verdicts "rested solely on the September 8th video." He points to the fact that the jury asked to see all the videos—including the September 2016 video at issue—during deliberations and argues that the victims' trial testimony alone was insufficient because it included allegations against his girlfriend and she was found not guilty.

¶18 We disagree and conclude that Brewer has not shown prejudice. The jury heard Jay and Tom testify in detail about the assaults and heard Brewer deny the allegations. As the trial court recognized, even if the September 2016 video had not been played for the jury, there is no reasonable probability that the jury would have found Brewer not guilty. *See **Strickland***, 466 U.S. at 694. Consequently, because Brewer has not shown prejudice, we need not discuss whether the alleged error was deficient. *See **id.*** at 697.

*Failure to Adequately Investigate and to Call Additional Witnesses*

¶19    Brewer next argues that trial counsel was ineffective for failing to adequately investigate his case and, more specifically, for failing to call three witnesses: his girlfriend, who he claims should have been tried separately; the doctor who examined Jay and Tom; and D.B., the mother of Brewer's older children.  With regard to all three potential witnesses, we conclude that Brewer has failed to show prejudice.  *See id.* at 694.

¶20    Turning to Brewer's arguments regarding his girlfriend, Brewer provides no evidence about what his girlfriend would have said had she testified. Brewer claims that she would have testified that the boys' allegations were false and that Carol coerced the boys to falsely accuse him in order to continue receiving money for fostering them.  But in support of this claim he provides only his own affidavit and unsworn letters from his girlfriend and his sister.  Likewise, Brewer points to no evidence that his girlfriend would have testified in his defense if she had been tried separately, nor has he shown that a severance motion would have succeeded.  Brewer has not provided an affidavit from his girlfriend, only hearsay from a private detective who acknowledged that she "refused to give … a written statement."  These allegations are not enough to show prejudice.  *See id.*

¶21    Considering next Brewer's claim that trial counsel was ineffective for not calling Dr. Judy Guinn, the doctor whose examinations of Jay and Tom showed no anal injuries, we conclude that Dr. Guinn's testimony would not have helped the defense.  After Dr. Guinn stated in her report that she observed no anal injuries on the victims, she noted that "a normal or nonspecific anogenital exam does not negate the child's disclosure."  The report further explains that "[m]ost children who have been victims of sexual abuse have a normal or non-specific

examination," and that "[i]n fact, up to 95% of children evaluated for sexual abuse, even those reporting penetration, have normal or non-specific findings." While Brewer argues that his counsel should have called Dr. Guinn as a witness because Jay and Tom's allegations, if true, would have fallen into the 5% in which there *was* anal injury, he provides no evidence for his assertion. Since Brewer provides only conclusory allegations with no factual support, he has not shown prejudice, *see **id.***.

¶22    Turning to Brewer's assertion that trial counsel was ineffective for not calling D.B., the mother of Brewer's two other children, as a witness, we conclude that it fails because it is speculative. Brewer provides an affidavit from D.B. in which she states that Brewer would have their children each week from Saturday morning until Monday morning unless Brewer went to Chicago on that weekend. Brewer argues that trial counsel was ineffective for not presenting this information at trial because D.B.'s testimony, coupled with his work schedule, would have shown the jury how unlikely it was that he had the opportunity to assault Jay and Tom. We disagree. D.B.'s testimony, even coupled with Brewer's work schedule and the victims' school and daycare schedules, would not have provided an alibi or made it impossible for Brewer to sexually assault them. Therefore, there is no reasonable probability that it would have made a difference at trial. *See **Strickland***, 466 U.S. at 694. Ultimately, Brewer has failed to show trial counsel's performance was both deficient and prejudicial; therefore, he is not entitled to a hearing on these claims. *See **Allen***, 274 Wis. 2d 568, ¶9.

*Failure to File a Motion to Sever Defendants*

¶23    Brewer additionally argues that trial counsel was ineffective for not moving to sever his case from his girlfriend's case. He asserts that such a motion

would have been granted and would have allowed trial counsel to call his girlfriend as a witness.

¶24    Brewer's claim fails because it is undeveloped and speculative. In order to sever a case based on the asserted need for a codefendant's testimony, a defendant must establish: "(i) a bona fide need for the testimony of his codefendant; (ii) the likelihood that the codefendant would testify at a second trial and waive his fifth amendment privilege; (iii) the substance of his codefendant's testimony; and (iv) the exculpatory nature and effect of such testimony." *State v. Brown*, 114 Wis. 2d 554, 559, 338 N.W.2d 857 (Ct. App. 1983), *abrogated on other grounds by State v. Salinas*, 2016 WI 44, ¶30, 369 Wis. 2d 9, 879 N.W.2d 609. But Brewer has not made the required showing. As noted above, Brewer does not establish that his girlfriend actually would have testified at his trial had her case been severed from his, what she would have testified to, or how her testimony would have made a difference in his trial. *See also State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) (stating that this court does not consider undeveloped arguments). Because Brewer's allegations were conclusory, the trial court properly rejected Brewer's claim without a hearing. *See Allen*, 274 Wis. 2d 568, ¶9.

*Failure to Present Exculpatory Evidence*

¶25    Brewer also argues that trial counsel was ineffective for failing to introduce evidence that Brewer claims would have been exculpatory, including: interrogation videos of Brewer and his girlfriend; the victims' medical reports; the victims' March 2016 forensic interview transcripts; Brewer's work schedule, and the victims' school and daycare schedules. Brewer claims that his interrogation video shows that he twice asked for a polygraph test but did not

receive one; he further claims that his asking for a polygraph showed that he was innocent and "willing to do whatever he could to prove it" and that trial counsel's failure to introduce this evidence was both deficient and prejudicial.

¶26 We disagree. Brewer's repeated requests for a polygraph would not have made a meaningful difference given the strength of the evidence presented by the State. *See Strickland*, 466 U.S. at 694. Moreover, regarding Brewer's work schedule and the victims' school and daycare records, we have already explained that this evidence would not have, as Brewer argues, made it impossible or even difficult for Brewer to sexually assault the boys. Trial counsel was not ineffective for failing to include this evidence.

¶27 Finally, Brewer claims that trial counsel performed deficiently by not presenting transcripts of Jay and Tom's forensic interviews. He argues that he was prejudiced because the jury asked the court to show them the videos of all three forensic interviews during their deliberations, and if there had been transcripts, the jury would simply have requested those transcripts rather than watching the videos. Brewer's argument is speculative and undeveloped and we will not consider it further. *See Pettit*, 171 Wis. 2d at 646.

¶28 In sum, Brewer has not shown that any of his claims—taken separately or cumulatively—would have resulted in a reasonable probability that the jury would have found him not guilty. *See Strickland*, 466 U.S. at 694. We therefore need not analyze whether trial counsel performed deficiently. *See id.* at 697. Brewer is consequently not, for all the foregoing reasons, entitled to a hearing on his postconviction motion and the trial court was properly exercising its discretion to deny his motion without one. *See Allen*, 274 Wis. 2d 568, ¶9.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.